# United States District Court
### for the
### District of Colorado

AHMUAN WILLIAMS, Plaintiff

v.

CITY OF AURORA,
Defendant.

JESSICA YATES, Office of Attorney
Admissions, Defendant.

Case No._____

JESSICA YATES, Office of Attorney
Regulation, Defendant.

JOHN DOE, Unnamed Bar Applicant,
Defendant.

## PARTIES

1.  Ahmuan Williams ("Plaintiff"), plaintiff, is an adult male who applied for a license to practice law and passed the July 2023 bar exam.
2.  Jessica Yates ("Ms. Yates"), defendant, in her capacity as the head of the Office of Attorney Admissions, controls the Office of Attorney Admissions ("OAA") at 1300 Broadway, Suite 520, Denver, Colorado, 80203.
3.  Ms. Yates, defendant, in her capacity as the head of the Office of Attorney Regulation Counsel, controls the Office of Attorney Regulation Counsel at 1300 Broadway, Suite 520, Denver, Colorado, 80203.
4.  City of Aurora ("Aurora"), defendant, home rule municipality in Colorado located at 15151 E Alameda Pkwy, Aurora, CO 80012.
5.  John Doe, defendant, unnamed and unmasked July 2023 bar applicant.

## COMPLAINT

### Ms. Jessica Yates

Plaintiff, Ahmuan Williams, is seeking injunctive relief against Ms. Jessica Yates,

who is the head of OAA and the Office of Attorney Regulation Counsel. In May 2020,

Plaintiff moved from Colorado indefinitely to Oklahoma and attended law school.

Though Plaintiff now lives and works in Colorado in anticipation of a license to practice

1

law, all Plaintiff's belongings are in Oklahoma. Plaintiff carries an Oklahoma driver's license and his car is registered in Oklahoma. On March 31, 2022, Plaintiff submitted his bar application alleging that Aurora had committed criminal record fraud. Since then, OAA placed a character and fitness hold on Plaintiff's bar application which requires a due process hearing to resolve only after he passes the bar exam in accord with Colorado's minimum passing score.

During the July 26-7, 2022, bar exam, Plaintiff faced hostility circumstantially caused by the OAA's prosecutorial position about the character and fitness hold. That is, Aurora is incapable of fraud. Another test-taker, John Doe, was allowed to sit in Plaintiff's chair and spit in his drink, which he unknowingly consumed. Plaintiff continued the exam without reporting the occurrence, because reporting it during the bar exam would penalize Plaintiff's score and create a disruption during the exam. This potentially deprived Plaintiff of due process, because if he did not pass the bar exam, his low score would reflect the hostile environment; and the hostility would likely directly prevent him from being invited to the due process hearing. If the hostile environment created by Ms. Yates was used to prevent Plaintiff from attaining a score high enough to continue to the panel, then whether Plaintiff passed the exam is not relevant as to whether the panel's neutrality has been preserved by Ms. Yate's acceptance of this occurrence before and after it was reported. Today, Ms. Yates has done nothing to acknowledge this incident, so the panel's neutrality has not been preserved.

In September 2023, Plaintiff sought legal representation from an attorney to defend Plaintiff before the Character and Fitness Panel pro bono who was shook by Ms. Yate's office. This attorney was also a Commissioner for the Aurora Municipal Public

Defender's Office, a top-rated Colorado public defender office. Alas, in October 2023, Aurora attempted to shut down its public defender's office. When a large office of attorney's is closing, the Office of Attorney Regulation has a guide for closing practice. This guide requires the City of Aurora Planning Attorney to work directly with Ms. Yates about a number of issues, namely, conflicts. Although there are other things that need to be observed when closing practice, the top, first and most important item on the checklist is to check for conflicts. Ms. Yates, after the clandestine spit incident at the bar exam, did not spot the conflict that closing the Aurora Municipal Public Defender's Office would conflict Plaintiff's attorney for the panel, and that she would have more leverage over Plaintiff's attorney's interests. Ms. Yate's pyramiding for the panel hearing was obvious, and, as a result, no bids were taken by attorneys. This left Plaintiff's attorney in the water concerning the functioning of the office Ms. Yate's shook.

This situation created a conflict of interest because the municipal misconduct Plaintiff alleged in his bar application is tied to the City of Aurora, so Plaintiff demands relief. In addition to conflicting Plaintiff's attorney, between 2019 and 2024 (discovered in 2024), Aurora hastily reported a 20-year-old incident to the Colorado Bureau of Investigation (CBI) after Plaintiff informed them that no arrest record existed with CBI. Ms. Yates, in her role, violated Plaintiff's constitutional rights under the Privileges and Immunities Clause and 42 USC § 1983. Plaintiff is requesting that Ms. Yates be required to report all misconduct during bar exams and that Plaintiff be granted a law license for violations of due process during the application process.

**City of Aurora**

3

Plaintiff, appears before this court seeking injunctive relief, compensatory damages, pain and suffering, loss of enjoyment of life, lost wages, emotional distress, loss of consortium, mental anguish, impairment of quality of life and punitive damages from Aurora ("Aurora"), defendant. Aurora created a deepfake record about the Plaintiff from 1999-2004, during the same time Plaintiff worked for the City and County of Denver from 2001-2005. Aurora recently reported, to CBI, an arrest from 1999 after Plaintiff, in preparing for the bar, found it was not reported. This record is currently being employed to disqualify Plaintiff's bar application. Plaintiff has been in frequent communication with Aurora and City and County of Denver concerning records he has no personal knowledge of. Then in, October 2023, Aurora opened its budget to close its public defender's office creating a present conflict with Plaintiff's character and fitness attorney. By reporting a deepfake criminal record, Aurora violated Plaintiff's federal constitution and federal statutory rights, and such a claim is actionable under 42 USC 1983. Plaintiff is requesting compensatory damages, pain and suffering, loss of enjoyment of life, lost wages, emotional distress, loss of consortium, mental anguish, impairment of quality of life, punitive damages and record expungement.

### John Doe

Plaintiff, appears before this court seeking pain and suffering, motion distress, diminished quality of life and punitive damages from John Doe. On July 27, John Doe, when taking the bar exam, sat in Plaintiff's seat, then spit in his drink. John Doe sat in the chair of the African American Plaintiff and spit in his drink causing Plaintiff severe emotional distress. Plaintiff is currently working with a psychologist to address the

incident at the bar exam. Plaintiff is requesting pain and suffering, motion distress, diminished quality of life and punitive damages from John Doe.

JURISDICTION AND VENUE

6. This court has personal jurisdiction over Ms. Yates in her capacity as the head of OAA. Ms. Yates has minimum contacts in Colorado such that maintaining this suit does not offend the traditional notions of fair play and substantial justice. *State ex rel. Weiser v. JUUL Labs, Inc.*, 517 P.3d 682 (Colo. 2022). As the bar exam proctor and head of OAR, she purposefully directs activities important to this case. *Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013). Here, Ms. Yates directed the administration of the bar exam and was responsible for aiding the closure of the Aurora Municipal Public Defenders Office. Therefore, this court has personal jurisdiction over her.

7. This court has subject matter jurisdiction over Ms. Yates in her capacity as the head of OAA & Regulation Counsel because the claim alleges violations of the federal constitution and federal civil rights. Ms. Yates discriminated against Plaintiff's right to make a living during the bar application process which is actionable under the Privileges and Immunities Clause of the Constitution, and 42 USC § 1983. The district court has original jurisdiction of all civil actions arising under the Constitution, federal laws, or treaties. 28 U.S.C.A. § 1331 (West).

8. Qualified immunity does not insulate jurisdiction over Ms. Yates, because neutrality during due process and equality of the shared privileges and immunities of citizens are well-settled constitutional violations, and Ms. Yates controls the admissions process into the legal profession in Colorado. *See generally, Lunding*

*v. New York Tax Appeals Tribunal*, 522 U.S. 287 (1998) (finding that a NY statute violated the Privileges and Immunities Clause), *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985) (finding that New Hampshire's bar residency requirement violated the Privileges and Immunities Clause), *Helminski v. Supreme Court of Colorado*, 603 F. Supp. 401 (D. Colo. 1985) (finding Colorado's residency requirement violated the Privileges and Immunities Clause).

9.    Rights afforded under the Due Process and Privileges and Immunities Clauses of the Constitution were well-established at the time of the alleged conduct. Fair due process is well established, and this case alleges misconduct buried in the discrimination that would certainly affect due process, like the attempted closing of an entire office of attorneys. *See, Willner v. Committee on Character and Fitness*, 373 U.S. 96 (1963) (determining that procedural due process requirements must be met before a state can exclude someone from practicing law), *Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154 (1971) (assuring that the right to practice law is highly valuable and must adhere to the exacting demands of due process even when the denial is based on political beliefs), *Konigsberg v. State Bar of Cal.*, 353 U.S. 252 (1957) (requiring the state bar association to comply with due process requirements).

10.    This court has personal jurisdiction over Aurora, because Aurora is a home rule municipality in Colorado. Aurora is accused of violations of federal law and the Privileges and Immunities Clause of the Constitution, so it forfeits its' 11th Amendment immunity, and the city is personally liable for its conduct. *See generally, Hennessey v. University of Kansas Hospital Authority*, 53 F.4th 516 (D.

Kan. 2022) (ascertaining that 11th Amendment immunity does not extend to municipalities), *Elephant Butte Irr. Dist. of New Mexico v. Department of Interior*, 160 F.3d 602 (D. N.M. 1998) (describing the Ex Parte Young Doctrine as a powerful tool to ensure state compliance to federal laws).

11. This court has subject matter jurisdiction over Aurora because the claim alleges violations of the federal constitution and federal civil rights. This case alleges Aurora violated U.S.C.A. §§ 1028, 1001-2, & 1983. The district court has original jurisdiction of all civil actions arising under the Constitution, federal laws, or treaties. 28 U.S.C.A § 1331 West.

12. This court has personal jurisdiction over John Doe, because the bar exam incident that gives rise to the claim occurred in Colorado. John Does's actionable conduct was in Colorado, so the defendant's conduct within the avails him to the court's jurisdiction no matter his residency. *See, Walden v. Fiore*, 571 U.S. 277 (2014) (focusing personal jurisdiction on the defendant's conduct), *Compañia de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269 (10th Cir. 2020) (finding that a court may exercise personal jurisdiction over actions purposefully directed at the forum state).

13. This court has supplemental subject matter jurisdiction over the negligence and negligent infliction of emotional distress claims against John Doe, because the incident arises from a common nucleus of operative facts as the main claims. *Osborn v. Haley*, 549 U.S. 225 (2007) (considering judicial economy as a basis for exercising pendant jurisdiction over state claims that have a "common nucleus of operative facts").

7

## FACTS

### Count 1: Negligence

14. Plaintiff brings a state law claim for willful and wanton negligence against Mr. John Doe under, COLO. REV. STAT. § 13-21-111.

15. This Court has supplemental jurisdiction over this state law claim pursuant to, 28 U.S.C.A. § 1367, because it arises from a common nucleus of operative facts as Plaintiff's federal claims.

16. Plaintiff's federal claims include violations of the Privileges and Immunities Clause of the United States Constitution.

17. The state negligence claim is closely related to the federal claims and stems from the same set of facts as the federal claim.

18. At the time of the incident, Mr. John Doe was a fellow bar exam applicant.

19. Mr. John Doe engaged in willful and wanton negligence during the July 2023 bar examination.

20. Mr. John Doe intentionally or recklessly disregarded Plaintiff's rights and safety.

21. During the bar exam, Mr. John Doe sat in Plaintiff's assigned seat without authorization. While seated in Plaintiff's chair, Mr. John Doe negligently spit in Plaintiff's drink.

22. This act of spitting in Plaintiff's drink caused harm to Plaintiff, including emotional distress and fear of contamination.

23. Mr. John Doe's actions were reckless, demonstrating a disregard for the foreseeable harm to Plaintiff.

8

24. Mr. John Doe's actions were grossly negligent, rising to the level of willful and wanton conduct.

25. As a result of Mr. John Doe's actions, Plaintiff experienced humiliation, anxiety, and distress during and after the bar exam.

26. Plaintiff had no prior interactions with Mr. John Doe before this incident.

27. Plaintiff attempted to remove Mr. John Doe from his seat without any assistance from exam proctors or officials.

28. The failure to assist Plaintiff in this situation further exacerbated the harm caused by Mr. John Doe's actions.

29. Mr. John Doe's conduct was unreasonable under the circumstances and showed a disregard for Plaintiff's rights. His actions exceeded the bounds of human decency.

30. As a result of Mr. John Doe's actions, Plaintiff's bar exam performance and emotional well-being were severely impacted.

31. Mr. John Doe's conduct caused direct and foreseeable harm to Plaintiff's legal career.

32. Plaintiff seeks monetary damages from Mr. John Doe for the willful and wanton negligence that occurred during the bar exam.

Relation to Ms. Yates' Actions

33. Plaintiff's claims against Mr. John Doe arise from the same nucleus of operative facts as the claims against Ms. Yates.

34. Ms. Yates, as the head of the OAA, was responsible for ensuring the integrity of the bar exam process.

35. Ms. Yates may only be sued for injunctive relief under the Ex Parte Young doctrine as she is a state official acting in her official capacity.

36. Mr. John Doe, in contrast, is subject to monetary damages as a private individual who committed tortious acts.

37. The negligence and emotional distress claims against Mr. John Doe are intertwined with Ms. Yates' failure to prevent or address the hostile environment at the exam.

38. Ms. Yates had a duty to maintain order and fairness during the bar exam but failed to intervene when Mr. John Doe engaged in wrongful conduct then failed to report it.

39. Ms. Yates' inaction contributed to the negligent environment that allowed Mr. John Doe's behavior to occur.

40. Plaintiff's claims for injunctive relief against Ms. Yates and monetary damages against Mr. John Doe are related and stem from the same incident.

Conclusion

41. Plaintiff seeks relief from this Court, including monetary damages against Mr. John Doe for willful and wanton negligence and negligent infliction of emotional distress.

42. Plaintiff also seeks injunctive relief against Ms. Yates for her failure to protect the integrity of the bar exam process.

43. The claims against Mr. John Doe and Ms. Yates are part of a broader pattern of misconduct that deprived Plaintiff of his constitutional rights.

**Count 2: Negligent Infliction of Emotional Distress**

44. Plaintiff also brings a state law claim for negligent infliction of emotional distress against Mr. John Doe under Colorado law.

45. This Court has supplemental jurisdiction over this state claim because it arises from the same facts as Plaintiff's federal claims.

46. The claim for negligent infliction of emotional distress is closely related to Plaintiff's claim under the Privileges and Immunities Clause of the United States Constitution and 42 USC § 1983.

47. Mr. John Doe, as a bar exam applicant, is subject to liability for monetary damages arising from this claim.

48. At the time of the July 2023 bar exam, Mr. John Doe negligently inflicted emotional distress upon Plaintiff.

49. Mr. John Doe's conduct, specifically sitting in Plaintiff's chair and spitting in Plaintiff's drink, caused emotional distress.

50. Plaintiff did not consent to Mr. John Doe's actions, which created a hostile and intimidating exam environment.

51. Mr. John Doe's actions were not only reckless but also negligent, as they foreseeably caused emotional harm.

52. Plaintiff suffered severe emotional distress, including anxiety, fear of contamination, and humiliation.

53. Mr. John Doe's actions occurred in a public setting during a critical professional examination.

54. The emotional distress caused by Mr. John Doe's conduct was foreseeable given the circumstances of the incident.

55.     Mr. John Doe should have known that his actions would cause emotional harm to Plaintiff.

56.     Mr. John Doe's actions disrupted Plaintiff's focus and performance during and after the bar exam. The negligent infliction of emotional distress was a direct result of Mr. John Doe's actions during the bar exam.

57.     Plaintiff's emotional distress continued beyond the bar exam and impacted Plaintiff's overall well-being.

58.     Plaintiff seeks compensatory damages from Mr. John Doe for the negligent infliction of emotional distress caused by his actions.

59.     Plaintiff incorporates all allegations made in ¶¶ 28-35.

60.     Plaintiff incorporates all allegations made in ¶¶ 36-9.

**Count 3: Violation of the Privileges and Immunities Clause of the Constitution**

Plaintiff's Out-of-State Citizenship

61.     Plaintiff became a citizen of Oklahoma in 2020 when he moved his belongings out of Colorado and obtained an Oklahoma driver's license.

62.     All of Plaintiff's belongings are in Oklahoma.

63.     Plaintiff does not currently hold a Colorado driver's license.

64.     Plaintiff alleges that the actions of Ms. Yates and Aurora violated the Privileges and Immunities Clause because he is a former in-state, now out-of-state citizen.

65.     Ms. Yates and Aurora discriminated against Plaintiff because he was no longer a Colorado resident when applying for bar admission.

July 2023 Bar Exam and Hostile Environment

66.    Plaintiff alleges that Ms. Yates, in her role with OAA, violated the Privileges and Immunities Clause during the July 2023 bar exam process.

67.    The bar exam was administered in a hostile manner as a tactic to refuse admission to the legal profession.

68.    Ms. Yates failed to report and address an incident during the July 2023 bar exam in which another test-taker sat in Plaintiff's seat and spit in his drink.

69.    OAA had a duty to report such incidents to protect the Privileges and Immunities of out-of-state citizens, including Plaintiff, who were taking the exam.

70.    Ms. Yates' actions during the July 2023 bar exam were aimed at preventing Plaintiff from entering the legal profession by him not receiving a high enough exam score. OAA not independently reporting it breached the duty it owes to bar applicants.

71.    Ms. Yates allowed another test-taker to sit in Plaintiff's chair, and Plaintiff was left to remove the test-taker without assistance.

72.    The test-taker spat in Plaintiff's drink, which was not addressed by Ms. Yates or any exam proctors during or after the exam.

73.    Ms. Yates' failure to intervene allowed the hostile environment to persist, negatively impacting Plaintiff's exam experience.

74.    Ms. Yates failed to take necessary precautions to guard against test-taker hostilities during the bar exam.

75.    Plaintiff passed the July 2023 bar exam despite these hostile conditions.

Plaintiff's Prior Communications About Criminal Record and Rehabilitation

76. Plaintiff had previously raised concerns of fraud on his criminal record during the bar application process, which he had communicated to Ms. Yates March 2023.

77. Plaintiff's application process was compromised by the ongoing issues with his criminal record, which he alleged had been manipulated.

78. Plaintiff had informed Ms. Yates about the fraud during his law school application process, and she had knowledge of the same.

79. After Plaintiff became an Oklahoma citizen, his law school exceeded the academic standing of any Colorado law school.

Interference by City of Aurora and Conflicted Representation

80. Aurora reported a crime from over 20 years ago, which Plaintiff had no personal knowledge of, to the Colorado Bureau of Investigation (CBI).

81. This crime was reported to hinder Plaintiff's admission to the legal profession.

82. Plaintiff had previously discovered that the crime had not been reported, and upon notifying Aurora, it was subsequently reported to CBI.

83. Aurora's actions were an attempt to prevent Plaintiff from earning a living as an attorney.

84. In September 2023, Plaintiff hired a character and fitness attorney ("Ex-attorney") to represent him before the Character and Fitness panel.

85. Ex-attorney became conflicted in October 2023 when Aurora closed its public defender's office as part of a budget analysis.

86. Ex-attorney, a commissioner for the Aurora Municipal Public Defender's Office, was placed in a conflict of interest because of his dual active roles.

87. Plaintiff began working for the Office of the State Public Defender in August 2023. Closing Auora's public defender's office challenged the values of Plaintiff's employer.

88. The closure of the Aurora public defender's office, orchestrated by Aurora, conflicted Ex-attorneys ability to represent Plaintiff.

## Suppression of Juvenile Record and Character and Fitness Hearing

89. On an unspecified date, Ms. Yates' office sent Plaintiff an investigative report containing a juvenile record that Plaintiff had no personal knowledge of.

90. The juvenile record referenced by Yates' office suppressed the juvenile record Plaintiff was familiar with, which demonstrated his rehabilitation.

91. Plaintiff had worked for the Denver Department of Public Safety from 2001 to 2005, and this work history illustrated his rehabilitation from past transgressions.

92. Plaintiff's employment history included roles at the Denver Downtown Jail and other reputable positions in Denver's public service sectors. The juvenile criminal record conflicts with all Plaintiff's paid roles in Denver.

93. Ms. Yates' actions disregarded Plaintiff's rehabilitative efforts, which could have favorably impacted his Character and Fitness hearing through her interaction with Aurora.

## Denial of Fair and Neutral Hearing

94. Ms. Yates and Aurora's actions made it impossible for Plaintiff to win a fair and neutral hearing before the Character and Fitness panel.

15

95. Plaintiff would have to argue against a criminal record he had no personal knowledge of, which was unfairly raised by Aurora when they reported a 20-years old incident to CBI.

96. Plaintiff also faced an impossible challenge in using his four years of work for the City and County of Denver to illustrate his rehabilitation.

97. Plaintiff alleges that OAA and Aurora made it impossible for him to secure a favorable Character and Fitness determination.

98. Ms. Yates and Aurora's actions hindered Plaintiff's ability to use his past employment and rehabilitation history during the hearing.

Allegations of Discrimination and Lack of Rational Basis

99. Plaintiff alleges that Ms. Yates and Aurora acted without a rational basis in discriminating against him.

100. The actions of Yates and Aurora lacked any rational justification, violating Plaintiff's constitutional rights.

101. Ms. Yates and Aurora's actions were aimed at preventing Plaintiff from entering the legal profession by creating hostile conditions during the bar exam and afterwards, by closing the public defender's office, and reporting a 20-year-old crime to CBI.

102. Plaintiff's ability to earn a living as an attorney was hindered by the unfounded criminal record and hostile conditions during the bar exam.

103. Aurora's report of a 20-year-old crime further compounded the discriminatory actions against Plaintiff, because Aurora did not have a rational basis to close its

public defender's office. Aurora's actions damaged Plaintiff's progression in the legal profession, and biased all potential panel members.

104. Ms. Yates does not have a rational basis for her inaction during and after the bar exam.

105. Aurora does not have a rational basis for its actions in reporting the 1999 crime and conflicting Plaintiff's counsel by closing its public defender's office.

Conclusion

106. The OAA, as a state agency, is protected by the 11th Amendment from monetary damages but can be sued for injunctive relief.

107. Aurora, as a municipal entity, is not protected by the 11th Amendment and may be sued for damages.

108. The officers involved in this claim are not protected by qualified immunity because a clearly established constitutional right was violated.

109. Plaintiff alleges that the actions of Ms. Yates and Aurora violated his constitutional rights under the Privileges and Immunities Clause.

110. Plaintiff seeks injunctive relief and damages for violations of his rights to make living under the Privileges and Immunities Clause of the U.S. Constitution.

**Count 4: Violations of Due Process Clause & 42 USC § 1983**

Plaintiff's Background and Legal Basis

111. Plaintiff brings this action under 42 U.S.C. § 1983 against Aurora and Ms. Yates, in her role as head of OAA and Regulation Counsel.

112. This case arises from violations of Plaintiff's constitutional rights under color of state law by Aurora and Ms. Yates.

113.    Aurora is not protected by qualified immunity.

114.    Ms. Yates is protected by qualified immunity.

115.    Plaintiff is a citizen of the United States and is not a prisoner.

Bar Exam and Character and Fitness Panel Violations

116.    Plaintiff's right to a fair Character and Fitness Panel hearing was violated by the actions of Ms. Yates and OAA and Regulation Counsel. Ms. Yates permitted another applicant to sit in Plaintiff's chair during the July 2023 bar exam, resulting in the spitting incident.

117.    The Office of Attorney Regulation failed to take action or notify Plaintiff about the incident during or after the bar exam.

118.    Ms. Yates knew or should have known that the incident would compromise Plaintiff's due process rights before the Character and Fitness Panel because the offense could have resulted in Plaintiff not passing the bar exam disqualifying him from the panel hearing.

119.    Ms. Yates, in her role as head of OAA and Regulation Counsel, had a constitutional duty to protect the fairness of the bar exam and the fairness of the subsequent Character and Fitness Panel. Ms. Yates failed to protect Plaintiff from the hostile environment experienced during the July 2023 bar exam. The hostile environment at the exam was exhibited by the spitting incident, which was not addressed by Ms. Yates or her office.

120.    Ms. Yates leased the Denver Western Complex for the bar exam and had a duty to warn and prevent harm to exam applicants.

18

121. Ms. Yates violated Plaintiff's professional due process rights to a fair examination by allowing another applicant to sit in Plaintiff's chair during the exam.

122. The applicant who sat in Plaintiff's chair spit in Plaintiff's drink, causing further harm to Plaintiff. Plaintiff removed the applicant from his chair without assistance, despite the hostile nature of his action to invade Plaintiff's testing province.

123. Ms. Yates had a duty to ensure seating assignments were adhered to during the exam. Ms. Yates had a duty to guard against or warn of potential spitting incidents or similar misconduct. Ms. Yates failed to fulfill her duty, resulting in a violation of Plaintiff's due process rights and rights protected under the Privileges and Immunities Clause. The hostile environment and failure to address the spitting incident further biased the Character and Fitness Panel's hearing.

124. Aurora and Ms. Yates failed to ensure the integrity of the bar admission process.

Aurora's False Reporting of Criminal Records

125. Simultaneously, Aurora knowingly and recklessly reported a false 20-year-old criminal record to the Colorado Bureau of Investigation ("CBI"). Plaintiff conducted a CBI fingerprint record search in 2019 for juvenile incidences, and CBI, after fingerprinting, found none. Plaintiff recently performed the same fingerprint procedure and background search in 2024, and found that Aurora reported a 1999 incident that allegedly happened 20 years ago.

126. Plaintiff has no personal knowledge of the alleged incident from 1999.

127. Plaintiff informed Aurora City Records after finding no record of the 1999 incident in the CBI database after he discovered CBI's record was unfounded frequently from 2019-24.

128. Aurora subsequently reported the 1999 incident to CBI despite Plaintiff's objections 20 years later.

129. Further, Aurora possesses criminal records from 1999, 2002, and 2003 that Plaintiff has no personal knowledge of.

130. These records are being used by OAA to challenge Plaintiff's character and fitness to practice law.

131. The hearing panel was tasked with determining the truth of the alleged juvenile criminal record reported by Aurora. Aurora's juvenile criminal record allegations are from a period when Plaintiff was working for the City and County of Denver.

132. Plaintiff has no personal knowledge of the juvenile criminal record allegations made by Aurora.

133. Aurora's reporting of the old criminal allegations and the creation of a conflicting criminal record negatively impacts Plaintiff's bar admission process.

Employment Timeline and Conflict with Denver Employment

134. From 2001 to 2005, Plaintiff worked for the City and County of Denver.

135. The existence of Aurora's criminal records creates a conflict with Plaintiff's employment history in Denver. If the criminal records were true, Plaintiff would have been dishonest during employment with the City and County of Denver.

136.    Plaintiff's employment with Denver Safe City, the Denver Museum of Nature and Science, Denver Environmental Health, and Denver Clerk and Recorder is impacted by the criminal record conflict.

137.    The criminal records from Aurora conflict with Plaintiff's employment timeline in Denver. Plaintiff has no knowledge of the alleged crimes during the time Aurora claims they occurred. Plaintiff worked in the Denver Downtown jail, but Aurora alleges arrests occurred prior to Plaintiff's employment there.

Conflict of Interest & Public Defender Office Closure

138.    In August 2023 Plaintiff began working for the Office of the State Public Defender, and in September 2023 he retained a character and fitness attorney ("Ex-attorney"). Plaintiff's Ex-attorney for the Character and Fitness Panel is a Commissioner of the Aurora Municipal Public Defender's Office. The attempted closure of the Aurora Municipal Public Defender's Office created a conflict of interest due to his position.

139.    Aurora knew Plaintiff was working at the Office of the State Public Defender's Office (and it's publicly available on LinkedIn), and the Office of Attorney Regulation knew Ex-attorney represented Plaintiff and allowed the conflict of interest to persist by closing its public defender's office. The Office of Attorney Regulation is responsible for, primarily, identifying conflicts upon closure of a law firm.

140.    The closure of the Aurora Municipal Public Defender's Office was part of a budgetary decision made in October 2023. In 2024, Aurora opened bids for private attorneys to take over public defense cases, but no bids were received.

21

141. In October 2023, Aurora ordered the cessation of the Aurora Municipal Public Defender's Office as part of its budget review. The closure of the Aurora Public Defender's Office opened the office to bids from private attorneys. And no private attorneys submitted bids to take over public defense cases in Aurora.

142. The closure of the Aurora Public Defender's Office directly impacted Plaintiff's case.

143. Plaintiff's Ex-attorney was a Commissioner of the Aurora Public Defender's Office. The closure of the public defender's office created a present conflict of interest for Ex-attorney, who was representing Plaintiff, because Plaintiff alleged Aurora committed criminal record fraud while he was working for the City and County of Denver.

144. The closure of the Aurora Public Defender's Office further complicated Ex-attorney's representation of Plaintiff because no bids were taken.

145. Plaintiff's due process rights were further compromised due to the conflict of interest and the closure of the public defender's office. The closure of the Aurora Public Defender's Office occurred while Plaintiff was preparing for his Character and Fitness Panel hearing.

146. The closure of the Aurora Public Defender's Office influenced the panel's perception of Plaintiff's case inevitably, because the closure of the public defender's office was broadcast nationwide, and the panel knows that Plaintiff alleges the fraudulent criminal record created by Aurora in his bar application.

147. Additionally, Plaintiff began working for the Office of the State Public Defender in August 2023. The closure of the Aurora Public Defender's Office was contrary

22

to the values of the Office of the State Public Defender, putting Plaintiff's job at risk.

Bias in Due Process Hearing

148. Biased circumstances surrounded Plaintiff's Character and Fitness hearing. The hearing panel's ability to impartially assess Plaintiff's case was compromised by the criminal records conflict, spit during the bar exam, and the closure of the Aurora Public Defender's Office.

RELIEF

Injunctive Relief Against OAA

149. Plaintiff seeks an injunction mandating OAA to report all misconduct occurring during bar examinations.

150. The reporting system should be compulsory, with no exceptions, covering all forms of misconduct, harassment, and hostile behavior.

151. A strict liability standard must apply to OAA for any failure to report misconduct during the bar exam.

152. Any unreported misconduct should automatically result in penalties or corrective measures imposed on OAA.

153. Plaintiff requests an independent committee to oversee the implementation of the mandatory reporting system. OAA must investigate all reported incidents promptly and fairly.

154. Plaintiff seeks an order requiring OAA to take immediate action when misconduct is reported during a bar exam.

155. The OAA should provide a detailed report of any misconduct to the affected test-taker.

156. Plaintiff requests that OAA ensure protection for out-of-state test-takers, guarding them from discrimination.

157. This mandatory reporting requirement should apply to all future bar examinations in Colorado.

158. Plaintiff requests that OAA be ordered to issue his Colorado bar license as a result of the violation of his due process rights.

159. The issuance of the bar license is requested to remedy the hostile environment and due process violations during the July 2023 bar exam. OAA's failure to protect Plaintiff's due process rights during the Character and Fitness hearing necessitates the issuance of his bar license.

160. Plaintiff seeks an order compelling OAA to process and approve his bar application without further delay.

161. The issuance of Plaintiff's bar license is a necessary corrective measure for OAA's failure to intervene and prevent harm.

162. Plaintiff requests that OAA be ordered to maintain a record of all misconduct incidents reported during the bar exams.

163. OAA should be compelled to address any past misconduct that was improperly handled.

164. Plaintiff seeks an order requiring OAA to revise its examination procedures to ensure fair treatment of all test-takers.

165. OAA must implement safeguards to prevent hostile and discriminatory environments during future bar exams.

<u>Injunctive Relief Against the City of Aurora</u>

166. Plaintiff seeks an injunction requiring Aurora to expunge the criminal records at issue in this case.

167. The criminal record, which Plaintiff has no personal knowledge of, should be expunged from all databases maintained by Aurora.

168. Plaintiff alleges that the criminal record was used unfairly to prevent his entry into the legal profession.

169. The expungement is necessary because the record has no basis in Plaintiff's knowledge or experience.

170. Plaintiff requests an order compelling Aurora to notify all relevant agencies, including the Colorado Bureau of Investigation, that the record has been expunged.

171. Aurora must ensure that no further reports of this criminal record are made to state or federal authorities.

172. Expunging the record is necessary to protect Plaintiff's rights under the Privileges and Immunities Clause of the U.S. Constitution.

173. The criminal record has caused significant harm to Plaintiff's reputation and professional opportunities, necessitating expungement.

174. Plaintiff seeks an injunction to prevent Aurora from using this record against him in any future proceedings.

175. Aurora must issue a formal acknowledgment that the criminal record has been expunged and no longer has any legal effect.

176. Plaintiff seeks an order compelling Aurora to review its practices for reporting criminal records to ensure accuracy and fairness. The expungement of the record is crucial to Plaintiff's ability to proceed with his legal career.

177. Plaintiff requests that Aurora be required to provide confirmation to Plaintiff and the court that the expungement has been completed.

178. The expungement process must be carried out within a specified timeframe to ensure timely resolution.

179. Aurora should be prohibited from further dissemination or reference to the expunged record in any legal or administrative matters.

180. Plaintiff seeks an order requiring Aurora to revise its reporting policies to prevent similar harm to other individuals in the future.

Loss of Earning Power

181. Plaintiff seeks compensatory damages from John Doe and Aurora for loss of earning power.

182. The delay in Plaintiff's bar admission has caused him to miss out on numerous career opportunities.

183. Plaintiff alleges that John Doe's and Aurora's actions have significantly impacted his ability to earn a living.

184. Plaintiff's potential earning power as a licensed attorney has been diminished by their interference. The inability to practice law in Colorado has directly affected Plaintiff's career trajectory.

185.    Plaintiff seeks damages for the financial losses caused by the actions of John Doe and Aurora.

186.    Plaintiff has lost the opportunity to earn income in the legal profession due to the misconduct of John Doe and Aurora.

187.    The delay in obtaining his bar license has resulted in substantial loss of future income.

188.    Plaintiff's professional development and earning capacity have been severely hindered by the actions of John Doe and Aurora.

189.    The compensatory damages sought reflect the income Plaintiff would have earned as a licensed attorney in Colorado.

190.    Plaintiff's lost earning power includes both immediate income and long-term career opportunities.

191.    The misconduct of John Doe and Aurora has irreparably harmed Plaintiff's financial standing and career prospects.

192.    Plaintiff requests monetary relief for the damages caused by the delay in his bar admission and lost income.

193.    The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Lost Wages- Back-Pay

194.    Plaintiff seeks damages for lost wages from John Doe and Aurora.

195.    Plaintiff alleges that he would have been employed as an attorney had it not been for the interference by John Doe and Aurora.

196.    Plaintiff's lost wages include the income he would have earned from the date of his anticipated bar admission to the present.

197.    The lost wages calculation includes missed opportunities for employment and professional advancement.

198.    Plaintiff's inability to secure legal employment is a direct result of the actions of John Doe and Aurora.

199.    Plaintiff seeks compensation for the actual income he would have earned during this period.

200.    The delay caused by John Doe and Aurora has prevented Plaintiff from achieving financial stability.

201.    Plaintiff's lost wages also reflect the benefits, bonuses, and promotions he would have received as a practicing attorney.

202.    Plaintiff requests that John Doe and Aurora be held financially liable for the lost wages caused by their misconduct.

203.    The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Loss Wages- Compensatory Damages

204.    Plaintiff seeks damages for lost wages from Aurora, including the five years of homelessness from 2006 to 2012 due to criminal record fraud.

205.    Plaintiff alleges that the fraudulent use of a criminal record, which he had no personal knowledge of, caused him to experience homelessness for five years.

206.    During the period from 2006 to 2012, Plaintiff was unable to secure stable employment due to the criminal record fraud.

207. Plaintiff was deprived of the opportunity to earn a livelihood during this period, resulting in significant financial losses. The fraudulently reported criminal record prevented Plaintiff from obtaining employment in both legal and non-legal professions, exacerbating his financial hardship.

208. Plaintiff's lost wages calculation includes the income he would have earned from 2006 to 2012 if the fraudulent criminal record had not been used against him.

209. The five years of homelessness resulted in not only financial loss but also the loss of career opportunities and personal advancement.

210. Aurora's failure to address the fraudulent criminal record caused this extended period of homelessness and financial deprivation.

211. Plaintiff seeks compensation for the income he would have earned during those five years, as well as the wages lost due to the delay in obtaining his bar admission.

212. The lost wages calculation further includes missed opportunities for career advancement and benefits that Plaintiff would have obtained as a licensed attorney.

213. Plaintiff's ability to achieve financial stability has been severely hindered by both the criminal record fraud and the subsequent interference in his bar admission process.

214. The damages sought reflect not only immediate lost income but also the long-term effects of financial instability caused by the five years of homelessness and the subsequent delay in bar admission.

215.  Plaintiff requests that Aurora be held financially liable for the lost wages resulting from the criminal record fraud and their ongoing misconduct, which have negatively impacted his professional and personal life.

216.  The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Pain and Suffering

217.  Plaintiff seeks damages for pain and suffering caused by the actions of Aurora.

218.  Plaintiff has endured homelessness for five years as a direct result of Aurora's record that he has no personal knowledge of.

219.  The financial and emotional strain of homelessness has caused Plaintiff significant suffering.

220.  Plaintiff requests damages for the physical and emotional hardship he experienced during his period of homelessness.

221.  The interference by John Doe and Aurora in Plaintiff's bar admission process contributed to his prolonged homelessness.

222.  Plaintiff seeks compensation for the mental suffering caused by his inability to secure stable housing for the period of 2006-2012.

223.  The five years of homelessness have caused Plaintiff lasting emotional trauma, including depression and anxiety.

224.  Plaintiff's pain and suffering include the financial insecurity and lack of basic living necessities during his homelessness.

225.  Plaintiff alleges Aurora's actions directly caused his homelessness and the resulting emotional harm.

226. Plaintiff requests damages for the emotional distress caused by being deprived of his right to pursue a legal career.

227. Plaintiff seeks compensation for the suffering caused by the loss of personal dignity and self-worth during his homelessness.

228. The ongoing uncertainty regarding his professional future has compounded Plaintiff's emotional suffering.

229. Plaintiff requests that Aurora be held responsible for the emotional and psychological damages caused.

230. The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Mental Suffering

231. Plaintiff seeks damages from John Doe for mental suffering caused by the hostile conditions during the July 2023 bar exam.

232. The actions of John Doe during the bar exam caused Plaintiff significant emotional distress.

233. The hostile environment and misconduct, including the spit incident, created unbearable levels of stress for Plaintiff.

234. Plaintiff seeks compensation for the anxiety and mental suffering he endured as a result of John Doe's behavior during the exam.

235. The mental anguish caused by John Doe's actions during the exam will have a lasting impact on Plaintiff's well-being.

236. Plaintiff alleges that the failure to address the misconduct at the bar exam caused further emotional harm.

237.    Plaintiff requests damages for the ongoing mental suffering caused by John Doe's actions and the hostile exam environment.

238.    Plaintiff's mental health has deteriorated as a result of the stress and uncertainty caused by the bar admission process and he currently works with a psychologist to cure the harms.

239.    Plaintiff seeks damages for the long-term psychological harm caused by John Doe's interference and misconduct.

240.    The emotional toll of the exam incident, combined with the delay in bar admission, has caused Plaintiff significant suffering.

241.    Plaintiff seeks compensation for the emotional distress he experienced as a result of John Doe's actions and the hostile conditions at the bar exam.

Loss of Future Opportunities

242.    Plaintiff seeks damages for the loss of future career opportunities caused by John Doe and Aurora.

243.    The inability to practice law has prevented Plaintiff from establishing himself in the legal profession.

244.    Plaintiff alleges that the actions of John Doe and Aurora have caused lasting harm to his professional prospects.

245.    The actions of John Doe and Aurora have caused Plaintiff to miss out on critical career-building experiences.

246.    Plaintiff's future earning potential has been severely impacted by the delay in his legal career caused by John Doe and Aurora.

247. The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

## Loss of Professional and Personal Relationships

248. Plaintiff seeks damages from Aurora for the personal and professional relationships that have been damaged.

249. Homelessness and the delay in bar admission caused by Aurora has strained Plaintiff's personal and professional relationships.

250. Plaintiff alleges that his inability to practice law has affected his standing within the legal community.

251. Plaintiff's personal relationships have also been harmed by the financial instability and emotional distress caused by the defendants.

252. The uncertainty of his professional future has caused tension in Plaintiff's personal life, warranting compensation.

253. The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

## Legal Fees and Costs

254. Plaintiff seeks damages to cover the legal fees and costs incurred as a result of John Doe and Aurora's actions.

255. The interference by John Doe and Aurora has forced Plaintiff to pursue this complaint.

256. Plaintiff seeks reimbursement for court fees, attorney's fees, and other costs associated with this case.

257. The protracted delay in bar admission has significantly increased Plaintiff's legal expenses, which he seeks to recover.

258. The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Other Emotional and Psychological Damages

259. Plaintiff seeks damages for the ongoing emotional and psychological toll caused by the discrimination and delay in the bar admission process.

260. The uncertainty and stress caused by the actions of John Doe and Aurora have led to long-term emotional harm.

261. Plaintiff requests compensation for the anxiety, depression, and other mental health issues caused by their interference in his legal career.

262. The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief: injunctive relief against the OAA requiring mandatory reporting of all misconduct at the bar examination, issuance of Plaintiff's bar license for failure to adhere to due process requirements, and expungement of the fraudulent criminal records by the City of Aurora; compensatory damages from John Doe and Aurora for lost wages, loss of earning power, pain and suffering due to homelessness and mental distress, and loss of personal and professional relationships; and an award for legal fees and costs incurred as a result of the defendants' actions. Plaintiff further requests any additional relief the Court deems just and proper.

X _Ahmuan Williams_
951 20th Street #3126
Denver, Colorado 80201
Ahmaunw@gmail.com
10/23/24

34