# United States District Court
for the
## District of Colorado

AHMUAN WILLIAMS, Plaintiff

v.

CITY OF AURORA,
Defendant.

JESSICA YATES, Office of Attorney
Admissions, Defendant.

Case No._____24CV2948__

JESSICA YATES, Office of Attorney
Regulation, Defendant.

JOHN DOE, Unnamed Bar Applicant,
Defendant.

## PARTIES

1.  Ahmuan Williams ("Plaintiff"), plaintiff, is an adult male who applied for a license to practice law and passed the July 2023 bar exam.
2.  Jessica Yates ("Ms. Yates"), defendant, in her capacity as the head of the Office of Attorney Admissions, controls the Office of Attorney Admissions ("OAA") at 1300 Broadway, Suite 520, Denver, Colorado, 80203.
3.  Ms. Yates, defendant, in her capacity as the head of the Office of Attorney Regulation Counsel, controls the Office of Attorney Regulation Counsel at 1300 Broadway, Suite 520, Denver, Colorado, 80203.
4.  City of Aurora ("Aurora"), defendant, home rule municipality in Colorado located at 15151 E Alameda Pkwy, Aurora, CO 80012.
5.  John Doe, defendant, unnamed and unmasked July 2023 bar applicant.

## COMPLAINT
### Ms. Jessica Yates

Plaintiff, Ahmuan Williams, is seeking injunctive relief against Ms. Jessica Yates, who is the head of OAA and the Office of Attorney Regulation Counsel. In May 2020, Plaintiff moved from Colorado indefinitely to Oklahoma and attended law school. Though Plaintiff now lives and works in Colorado in anticipation of a license to practice law, all Plaintiff's belongings are in Oklahoma. Plaintiff carries an Oklahoma driver's license and his car is registered in Oklahoma. On March 31, 2022, Plaintiff submitted his bar application alleging that Aurora had a fake criminal record. Since then, OAA placed a character and

1

fitness hold on Plaintiff's bar application which requires a due process hearing to resolve only after he passes the bar exam in accord with Colorado's minimum passing score.

During the July 26-7, 2022, bar exam, Plaintiff faced hostility circumstantially caused by the OAA's prosecutorial position about the character and fitness hold and Plaintiff's political beliefs (independent African American). That is, Plaintiff sold out Colorado by contesting the fake criminal records through going to law school. During the exam, another test-taker, John Doe, was allowed to sit in Plaintiff's chair and spit in his drink, which he unknowingly consumed. Plaintiff continued the exam without reporting the occurrence, because reporting it during the bar exam would penalize Plaintiff's score and create a disruption during the exam. This potentially deprived Plaintiff of due process, because if he did not pass the bar exam, his low score would reflect the hostile environment; and the hostility would likely directly prevent him from being invited to the due process hearing. If the hostile environment created by Ms. Yates was used to prevent Plaintiff from attaining a score high enough to continue to the panel, then whether Plaintiff passed the exam is not relevant as to whether the neutrality in the bar admission process was preserved by Ms. Yate's acceptance of this occurrence before and after it was reported. Today, Ms. Yates has no administrative procedure to address this incident, so Plaintiff's due process rights were eroded. OAA has reported no process for reporting hostile environment claims.

In September 2023, Plaintiff sought legal representation from an attorney to defend Plaintiff before the character and fitness panel pro bono who was shook by Aurora, and Ms. Yate's office after they entered an attorney-client relationship. This attorney was also a commissioner for the Aurora municipal public defender's office, a top-rated Colorado public defender office. Alas, in October 2023, Aurora attempted to shut down its public defender's office. When a large office of attorney's is closing, the Office of Attorney Regulation has a guide for closing practice. This guide requires the City of Aurora Planning Attorney to work directly with Ms. Yates about a number of issues, namely, conflicts. Although there are other things that need to be observed when closing practice, the top, first and most important item on the checklist is to check for conflicts. Ms. Yates, after the clandestine spit incident at the bar exam, did not spot the conflict that closing the Aurora municipal public defender's office would conflict Plaintiff's attorney for the panel, and that Aurora would have significant leverage over his interest in discovering the employment history Plaintiff had on Denver. Ms. Yate's and Aurora pyramiding for the panel hearing was obvious, and, as a result, no bids were taken by attorneys. This left Plaintiff's attorney in the water concerning the functioning

of the office, Ms. Yate's shook. Plaintiff's attorney withdrew his representation 2 weeks before the panel hearing without submitting anything to OAA leading to a determination against Plaintiff's license to practice law.

This situation created a conflict of interest because the municipal misconduct Plaintiff alleged in his bar application is tied to the City of Aurora, so Plaintiff demands relief. In addition to conflicting Plaintiff's attorney, recently, Aurora hastily reported a 20 year old incident to the Colorado Bureau of Investigation ("CBI") after Plaintiff informed them that no arrest record existed with CBI. Aurora and Ms. Yates, in her role, violated Plaintiff's constitutional rights under the Privileges and Immunities Clause and 42 USC § 1983. Plaintiff is requesting that Ms. Yates be required to report all misconduct during bar exams and that Plaintiff be granted damages tantamount to being a lawyer.

### City of Aurora

Plaintiff, appears before this court seeking injunctive relief, compensatory damages, pain and suffering, loss of enjoyment of life, lost wages, emotional distress, loss of consortium, mental anguish, impairment of quality of life and punitive damages from Aurora ("Aurora"), defendant. Aurora created a fake record about the Plaintiff from 1999-2004, during the same time Plaintiff worked for the City and County of Denver from 2001-2005. OAA reported these incidents on a second deficiency report given to Plaintiff's ex-attorney not on the first deficiency report given to the Plaintiff. Aurora recently reported, to CBI, an arrest from 1999 after Plaintiff, in preparing for the bar, found it was not reported. This record is currently being employed to disqualify Plaintiff's bar application. Plaintiff has been in frequent communication with Aurora and City and County of Denver concerning records he has no personal knowledge of that overlaps his employment with the City and County of Denver. Plaintiff is not an undisclosed government agent and has not consented to or received any kind of burn notice. Then in, October 2023, Aurora opened its budget to close its public defender's office after Plaintiff engaged ex-attorney creating a present conflict with Plaintiff's character and fitness attorney. By creating a deep fake record from 1999 in 2001, then reporting it in 2024, Aurora violated Plaintiff's federal constitution and federal statutory rights, and such a claim is actionable under 42 USC 1983. Plaintiff is requesting compensatory damages, pain and suffering, loss of enjoyment of life, lost wages, emotional distress, loss of consortium, mental anguish, impairment of quality of life, punitive damages and record expungement.

### John Doe

Plaintiff, appears before this court seeking pain and suffering, emotional distress, diminished quality of life and punitive damages from John Doe. On July 27, John Doe, when taking the bar exam, sat in Plaintiff's seat, then spit in his drink. John Doe sat in the chair of the African American Plaintiff and spit in his drink causing Plaintiff severe emotional distress. Plaintiff is currently working with a psychologist to address the incident at the bar exam. Plaintiff is requesting pain and suffering, emotional distress, diminished quality of life and punitive damages from John Doe.

JURISDICTION AND VENUE

6.    This court has personal jurisdiction over Ms. Yates in her capacity as the head of OAA. Ms. Yates has minimum contacts in Colorado such that maintaining this suit does not offend the traditional notions of fair play and substantial justice. *State ex rel. Weiser v. JUUL Labs, Inc*., 517 P.3d 682 (Colo. 2022). As the bar exam proctor and head of OAA, she purposefully directs activities important to this case. *Newsome v. Gallacher*, 722 F.3d 1257 (10th Cir. 2013). Here, Ms. Yates directed the administration of the bar exam and was responsible for aiding the closure of the Aurora municipal public defender's office. Therefore, this court has personal jurisdiction over her.

7.    This court has subject matter jurisdiction over Ms. Yates in her capacity as the head of OAA & Regulation Counsel because the claim alleges violations of the federal constitution and federal civil rights. The facts essential to this case concern concrete actions against federal law that would influence Plaintiff's professional career. This case does not challenge the panel's review of Plaintiff's character and fitness to practice law, because the battery during the bar exam mentally impaired Plaintiff. Ms. Yates discriminated against Plaintiff's right to make a living during the bar application process which is actionable under the Privileges and Immunities Clause of the Constitution, and 42 USC § 1983. Ms. Yates discriminated against Plaintiff for political reasons after Plaintiff moved to a Republican jurisdiction. After law school the Colorado Supreme Court considered and ruled that the Republican President-elect should be disqualified from the Colorado presidential ballot. The district court has original jurisdiction of all civil actions arising under the Constitution, federal laws, or treaties. 28 U.S.C.A. § 1331 (West).

8.    Qualified immunity does not insulate jurisdiction over Ms. Yates, because neutrality during due process and equality of the shared privileges and immunities of citizens

are well-settled constitutional violations, and Ms. Yates controls the admissions
process into the legal profession in Colorado. *See generally*, *Lunding v. New York Tax
Appeals Tribunal*, 522 U.S. 287 (1998) (finding that a NY statute violated the
Privileges and Immunities Clause), *Supreme Court of New Hampshire v. Piper*, 470
U.S. 274 (1985) (finding that New Hampshire's bar residency requirement violated
the Privileges and Immunities Clause), *Helminski v. Supreme Court of Colorado*, 603
F. Supp. 401 (D. Colo. 1985) (finding Colorado's residency requirement violated the
Privileges and Immunities Clause).

9.     Rights afforded under the Due Process and Privileges and Immunities Clauses of the
Constitution were well-established at the time of the alleged conduct. Fair due
process is well established, and this case alleges misconduct buried in the
discrimination that would certainly affect due process, like the attempted closing of
an entire office of attorneys and allowing misconduct during the bar exam. *See*,
*Willner v. Committee on Character and Fitness*, 373 U.S. 96 (1963) (determining that
procedural due process requirements must be met before a state can exclude someone
from practicing law), *Law Students Civil Rights Research Council, Inc. v. Wadmond*,
401 U.S. 154 (1971) (assuring that the right to practice law is highly valuable and
must adhere to the exacting demands of due process even when the denial is based on
political beliefs), *Konigsberg v. State Bar of Cal.*, 353 U.S. 252 (1957) (requiring the
state bar association to comply with due process requirements).

10.    This court has personal jurisdiction over Aurora, because Aurora is a home rule
municipality in Colorado. Aurora is accused of violations of federal law and the
Privileges and Immunities Clause of the Constitution, so it forfeits its' 11th
Amendment immunity, and the city is personally liable for its conduct. *See generally,*
*Hennessey v. University of Kansas Hospital Authority*, 53 F.4th 516 (D. Kan. 2022)
(ascertaining that 11th Amendment immunity does not extend to municipalities),
*Elephant Butte Irr. Dist. of New Mexico v. Department of Interior*, 160 F.3d 602 (D.
N.M. 1998) (describing the Ex Parte Young Doctrine as a powerful tool to ensure
state compliance to federal laws).

11.    This court has subject matter jurisdiction over Aurora because the claim alleges
violations of the federal constitution and federal civil rights. This case alleges Aurora
violated U.S.C.A. §§ 1028, 1001-2, & 1983. The district court has original

jurisdiction of all civil actions arising under the federal constitution, federal laws, or treaties. 28 U.S.C.A § 1331 West.

12. This court has personal jurisdiction over John Doe, because the bar exam incident that gives rise to the claim occurred in Colorado. John Does's actionable conduct was in Colorado, so the defendant's conduct within avails him to the court's jurisdiction no matter his residency. *See*, *Walden v. Fiore*, 571 U.S. 277 (2014) (focusing personal jurisdiction on the defendant's conduct), *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269 (10th Cir. 2020) (finding that a court may exercise personal jurisdiction over actions purposefully directed at the forum state).

13. This court has supplemental subject matter jurisdiction over the negligence and negligent infliction of emotional distress claims against John Doe, because the incident arises from a common nucleus of operative facts as the main claims. *Osborn v. Haley*, 549 U.S. 225 (2007) (considering judicial economy as a basis for exercising pendent jurisdiction over state claims that have a "common nucleus of operative facts").

FACTS

**Count 1: Battery Incident Attributed to Negligence During Bar Exam**

14. Plaintiff brings a state law claim for willful and wanton negligence against Mr. John Doe under Colorado law.

15. At the time of the incident, Mr. John Doe was a fellow bar exam applicant.

16. Mr. John Doe engaged in willful and wanton negligence during the July 2023 bar examination.

17. Mr. John Doe intentionally or recklessly disregarded Plaintiff's rights and safety.

18. During the bar exam, Mr. John Doe sat in Plaintiff's assigned seat without authorization. While seated in Plaintiff's chair, Mr. John Doe negligently spit in Plaintiff's drink.

19. This act of spitting in Plaintiff's drink caused harm to Plaintiff, including emotional distress and fear of contamination.

20. Mr. John Doe's actions were reckless, demonstrating a disregard for the foreseeable harm to Plaintiff.

21. Mr. John Doe's actions were grossly negligent, rising to the level of willful and wanton conduct.

22.    As a result of Mr. John Doe's actions, Plaintiff experienced humiliation, anxiety, and distress during and after the bar exam.

23.    Plaintiff had no prior interactions with Mr. John Doe before this incident. And John Doe's political affiliation and domicile are unknown.

24.    Plaintiff attempted to remove Mr. John Doe from his seat without any assistance from exam proctors or officials.

25.    The failure to assist Plaintiff in this situation further exacerbated the harm caused by Mr. John Doe's actions, because the situation lacks mediation.

26.    Mr. John Doe's conduct was unreasonable under the circumstances and showed a disregard for Plaintiff's rights. His actions exceeded the bounds of human decency.

27.    As a result of Mr. John Doe's actions, Plaintiff's bar exam performance and emotional well-being were severely impacted.

28.    Mr. John Doe's conduct caused direct and foreseeable harm to Plaintiff's legal standing and career.

Relation to Ms. Yates' Actions

29.    Ms. Yates, as the head of the OAA, was responsible for ensuring the integrity of the bar exam process.

30.    The negligence and emotional distress claims against Mr. John Doe are intertwined with Ms. Yates' failure to prevent or address the hostile environment at the bar exam. OAA had no administrative procedure to address the wrongful conduct.

31.    Ms. Yates had a duty to maintain order and fairness during the bar exam based on the objective political environment of the applicants, but failed to warn of potential incidents, failed to intervene when Mr. John Doe subjectively engaged in wrongful conduct, then she failed to report it.

32.    Ms. Yates' inaction contributed to the negligent environment that allowed Mr. John Doe's behavior to occur.

33.    Plaintiff's claims for injunctive relief against Ms. Yates and monetary damages against Mr. John Doe are related and stem from the same incident.

Conclusion

34.    The claims against Mr. John Doe and Ms. Yates are part of a broader pattern of misconduct that deprived Plaintiff of his constitutional rights.

**Count 2: Emotional Distress Negligently Inflicted by Battery During Bar Exam**

35.     Plaintiff also brings a state law claim for negligent infliction of emotional distress against Mr. John Doe under Colorado law.

36.     At the time of the July 2023 bar exam, Mr. John Doe negligently inflicted emotional distress upon Plaintiff.

37.     Mr. John Doe's conduct, specifically sitting in Plaintiff's chair and spitting in Plaintiff's drink, caused Plaintiff emotional distress.

38.     Plaintiff did not consent to Mr. John Doe's actions, which created a hostile and intimidating exam environment.

39.     Mr. John Doe's actions were not only reckless but also negligent, as they foreseeably caused emotional harm.

40.     Plaintiff suffered severe emotional distress, including anxiety, fear of contamination, and humiliation.

41.     Mr. John Doe's actions occurred in a public setting during a critical professional examination.

42.     The emotional distress caused by Mr. John Doe's conduct was foreseeable given the circumstances of the incident.

43.     Mr. John Doe should have known that his actions would cause emotional harm to Plaintiff.

44.     Mr. John Doe's actions disrupted Plaintiff's focus and performance during and after the bar exam. The negligent infliction of emotional distress was a direct result of Mr. John Doe's actions during the bar exam.

45.     Plaintiff's emotional distress continued beyond the bar exam and impacted Plaintiff's overall well-being and legal career.

46.     Plaintiff seeks compensatory damages from Mr. John Doe for the negligent infliction of emotional distress caused by his actions.

47.     Plaintiff incorporates all allegations made in ¶¶ 14-28.

48.     Plaintiff incorporates all allegations made in ¶¶ 29-34.

**Count 3: Breach of the Privileges and Immunities Clause Through Implicit Residency Requirement**

Plaintiff's Out-of-State Citizenship

49.     Plaintiff became a citizen of Oklahoma in 2020 when he moved his belongings out of Colorado and obtained an Oklahoma driver's license.

50.     All of Plaintiff's belongings are in Oklahoma.

51.     Plaintiff does not currently hold a Colorado driver's license.

52.     Plaintiff alleges that the actions of Ms. Yates and Aurora violated the Privileges and Immunities Clause because he is a former in-state, now out-of-state citizen.

53.     As a Colorado citizen, Plaintiff voted and participated in democratic political campaigns of several of Colorado's electorate including former Governor Bill Ritter, Former Mayor Hickenlooper and others.

54.     As an Oklahoma citizen, Plaintiff also assisted and volunteered in republican political campaigns and conservative political figures frequented Plaintiff's church in Oklahoma. Plaintiff was an attender of what democrat's label, republican political rallies, and OAA knew from his resume.

55.     Colorado is an uncontested democratic state, while Oklahoma is an uncontested republican state. And while an in-state citizen he participated in democrat's political campaigns of Colorado's current electorate, and while an out-of-state citizen participated in republican campaigns of Oklahoma's current electorate notwithstanding Colorado's political polarization against republicans.

56.     Ms. Yates and Aurora discriminated against Plaintiff because he was no longer a Colorado resident when applying for bar admission and because republican states support President-elect, Donald Trump. Political polarization was ignored. Applicants with the Plaintiff's demographics and political beliefs were left to the dogs.

July 2023 Bar Exam Hostile Environment Created an Implicit Residency Requirement

57.     Plaintiff alleges that Ms. Yates, in her role with OAA, violated the Privileges and Immunities Clause during the July 2023 bar exam process.

58.     The July 2023 bar exam was administered in a hostile manner and not having a reporting process to address those hostilities makes hostility a viable tactic to refuse admission to the legal profession, because it is cheating.

59.     Ms. Yates failed to create an administrative complaint to address the incident during the July 2023 bar exam in which another test-taker sat in Plaintiff's seat and spit in his drink.

60.     Ms. Yates' inactions during the July 2023 bar exam became aimed at preventing Plaintiff from entering the legal profession by him not receiving a high enough exam score. OAA not independently having a reporting process breached the duty it owes to bar applicants regarding cheating on the bar exam.

61.  Ms. Yates allowed another test-taker to sit in Plaintiff's chair, and Plaintiff was left to remove the test-taker without assistance.

62.  The test-taker spat in Plaintiff's drink, which was not addressed by Ms. Yates or any exam proctors during or after the exam.

63.  Ms. Yates' failure to intervene allowed the hostile environment to persist, negatively impacting Plaintiff's exam experience and exam score. OAA is effectively condoning cheating on the exam by accepting its occurrence.

64.  Ms. Yates failed to take necessary precautions to guard against test-taker hostilities during the bar exam and failed to warn applicants of this type of misconduct.

65.  Plaintiff passed the July 2023 bar exam despite these hostile conditions.

Plaintiff's Prior Communications About Criminal Record and Rehabilitation Could Harm Legal Systems

66.  Plaintiff had previously raised concerns of a fake criminal record to Aurora, Denver, the Federal Bureau of Investigations and CBI.

67.  Plaintiff's application process was compromised by the ongoing issues with his criminal record because of the manipulation.

68.  Plaintiff had informed Ms. Yates about the fake record during his law school application process, and Aurora had knowledge of the same.

69.  After Plaintiff became an Oklahoma citizen, his law school exceeded the academic standing of any Colorado law school. The allegations here would cause harm to Colorado's legal system and bolster republican legal systems.

Interference by City of Aurora and Conflicted Representation

70.  Aurora reported a crime from over 20 years ago, which Plaintiff had no personal knowledge of, to the CBI.

71.  This crime was reported to hinder Plaintiff's admission to the legal profession, likely, after he moved to Oklahoma.

72.  Plaintiff had previously discovered in a fingerprint background check that the crime had not been reported, and Aurora Records reported that an unnamed and unmasked officers did not report the incident to the Aurora Police Department until 2001, not when it allegedly occurred in 1999. Upon notifying Aurora that CBI had no record in 2019, it was subsequently reported to CBI by September 2024.

73.  Aurora's actions were an attempt to prevent Plaintiff from earning a living as an attorney after he moved to Oklahoma. The timing of reporting, and 20 years span in

10

between, shows Aurora's actions were potentially because Plaintiff moved to a Republican state, and the Colorado Supreme Court considered and disqualified the president-elect from the Colorado ballot. This heightened tensions during and after the bar exam, because on November 21, 2023, the Colorado Supreme Court ruled President-elect Donald Trump could not appear on the Colorado presidential ballot. The United States Supreme Court reversed this decision earlier this year on March 4, 2024.

74.    In September 2023, Plaintiff hired a character and fitness attorney ("ex-attorney") to represent him before the character and fitness panel pro bono.

75.    Although ex-attorney was a commissioner of the Aurora public defenders, when Plaintiff engaged his service and he agreed to represent Plaintiff, there was no present conflict, however, when the nationwide publishing began about the Aurora public defenders office, ex-attorney received the second deficiency report and refused to submit my documents to OAA. Ex-attorney became conflicted in October 2023 when Aurora closed its public defender's office as part of a budget analysis, and in November 2023 when OAA created a new deficiency report containing Aurora's allegations. These three actions against Plaintiff's interests occurred with national attention to Aurora's lack of rational basis for closing its public defender's office.

76.    Ex-attorney, a commissioner for the Aurora municipal public defender's office, was placed in a conflict of interest because of his dual active roles after the closure was unsuccessful.

77.    Plaintiff began working for the Office of the State Public Defender in August 2023. Closing Auora's public defender's office challenged the values of Plaintiff's employer.

78.    The closure of the Aurora public defender's office, orchestrated by Aurora, conflicted ex-attorneys ability to represent Plaintiff. And over the course of 1 year (Sept. 12, 2023, to Sept. 30, 2024) of representation he did not submit any of the requested items to OAA, notwithstanding the fact that Plaintiff had submitted the requirements to him.

Suppression of Juvenile Record and Character and Fitness Hearing

79.    On an unspecified date, Ms. Yates' office sent Plaintiff an investigative report containing a juvenile record that Plaintiff had no personal knowledge of.

80.    The juvenile record referenced by Yates' office suppressed the juvenile record Plaintiff was familiar with, which was fully expunged contingent that Plaintiff committed no crimes. Aurora now alleges Plaintiff committed crimes at this time that he has no knowledge of.

81.    Plaintiff worked for the Denver Department of Public Safety from 2001 to 2005, around the time of the juvenile incidents on the November deficiency report.

82.    Plaintiff's employment history included roles at the Denver Downtown Jail and other reputable positions in Denver's public service sectors. The juvenile criminal record conflicts with all Plaintiff's paid full-time and part-time roles in Denver.

83.    OAA's second deficiency report disregarded Plaintiff's rehabilitative efforts, which could have favorably impacted his character and fitness hearing because they had the same knowledge, and tried to irrationally close their public defender office.

Denial of Fair and Neutral Hearing Made Impossible Through Violations of Well-Established Constitutional Rights

84.    Ms. Yates and Aurora made it impossible for Plaintiff to win a fair and neutral due process hearing before the character and fitness panel. Any opinion of the panel is irrelevant to due process because having an unknown fake felony detention record is a presumptive disqualifier from the legal profession. This is because the felony arrest was unknown to the Plaintiff and Aurora has a ministerial duty to create such criminal records on behalf of Colorado.

85.    Plaintiff would have to argue against a criminal record he had no personal knowledge of, which was unfairly re-raised by Aurora when they reported a 20 years old incident to CBI.

86.    Plaintiff also faced an impossible challenge in using his four years of working full-time for the City and County of Denver at the Department of Public Safety, Denver Museum of Nature and Science, Denver Department of Environmental Health, and Denver Clerk and Recorder, because the second deficiency report overlapped this time with crimes. This is distinguishable from the first deficiency report submitted to the Plaintiff because it usurped Plaintiff's work for the city.

87.    OAA and Aurora made it impossible for him to secure a favorable character and fitness determination by violating Plaintiff's well-established constitutional rights, because ex-attorney guarded the interests of Aurora by not submitting the deficiency requirements.

88.    By overlapping Plaintiff's full-time and part-time government jobs and asserting criminal conduct, Ms. Yates and Aurora obstructed his ability to leverage his employment history in future settings.

Discrimination Lacks Rational Basis

89.    Plaintiff alleges that Ms. Yates and Aurora acted without a rational basis in discriminating against him at the bar exam and after by closing Aurora's public defenders office.

90.    The actions of Yates and Aurora lacked any rational justification. Alas, their actions were unsuccessful.

91.    Ms. Yates and Aurora's actions were aimed at preventing Plaintiff from entering the legal profession by creating hostile conditions during the bar exam and afterwards, by creating a second deficiency report for ex-attorney, by trying to closing Aurora's public defender's office, and by reporting a 20 year old crime to CBI.

92.    Plaintiff's ability to earn a living as an attorney was hindered by the unfounded criminal record and hostile conditions during the bar exam.

93.    Aurora's report of a 20 year old crime further compounded the discriminatory actions against Plaintiff, because Aurora did not have a rational basis to close its public defender's office. Aurora's actions damaged Plaintiff's progression in the legal profession.

94.    Ms. Yates does not have a rational basis for her inaction during and after the bar exam. OAA does not have a rational basis to not have an administrative complaint process to report misconduct during and after the bar exam.

95.    Aurora does not have a rational basis for its actions in reporting incident from 20 years ago that they asserted was entered into the Aurora's system in 2001 by an unnamed and unmasked officer, and did not have a rational basis to conflict Plaintiff's counsel by closing its public defender's office. Ms. Yates did not have a rational basis to create a second deficiency report for ex-attorney with Aurora's false records and Plaintiff's brother's crimes, and OAA needed to change their investigator from Amanda Brooks to Investigator Dyson McGuire because of the inconsistent nature of Aurora's records. The totality of the circumstances shows OAA, Regulation Counsel, and Aurora, acted in tandem without rational basis to bias Plaintiff's application to the Colorado bar. And his application was subjectively biased by them.

Conclusion

96.    Plaintiff alleges that the actions of Ms. Yates and Aurora violated his constitutional rights under the Privileges and Immunities Clause.

97.    Plaintiff seeks injunctive relief and damages for violations of his rights to make living under the Privileges and Immunities Clause of the U.S. Constitution.

### Count 4: Violations of Due Process Clause & 42 USC § 1983

Plaintiff's Background and Legal Basis

98.    Plaintiff brings this action under 42 U.S.C. § 1983 against Aurora, a Colorado municipality, and Ms. Yates, the head of OAA and Regulation Counsel.

99.    Plaintiff is a citizen of the United States and is not a prisoner.

Aurora and Ms. Yates Acted Under Color of State Law When They Created False Records That Damaged Plaintiff's Reputation and Professional Opportunities, Transferred Fabricated Criminal Records to CBI Knowing It Was Without Legal Authorization, and Failed to Prevent and Address Hostile Conditions During the July 2023 Bar Exam

100.    Unnamed and unmasked officers in Aurora entered the 1999 incident into their records system in 2001, years after the alleged occurrence, violating state protocols for timely reporting while acting within their official capacities. The act of entering a record into a state regulated systems is an authority under the color of state law.

101.    Unnamed and unmasked officers used their official authority to create false criminal records that conflicted with Plaintiff's documented employment history, demonstrating misuse of the purposes of state systems. Aurora creates these records for every person accused of criminal activity in Aurora, so the authority to create a fake record operates under the color of state law.

102.    Aurora transferred 20 year old fabricated records to CBI, leveraging state-controlled databases to perpetuate the false information about the Plaintiff. This transfer is ministerially used by municipalities to report city crimes. Reporting a fake 20 year old incident to CBI requires actions performed by the state.

103.    Aurora's fabricated records were used in the state-regulated bar admission process, directly affecting Plaintiff's professional opportunities. The Colorado Supreme Court controls bar admissions.

104.    Aurora mishandled alleged juvenile criminal records near the time Plaintiff trained to become a student attorney, violating state protections for minors and misusing their authority as state actors. This is the only time Aurora could have gotten the Plaintiff's personal information. Therefore, Aurora acted under color of state law for training

Teen Court attorney's to defend tender age offenders, then using personal information against him in fake criminal records.

105.    Ms. Yates, as head of OAA, oversaw the July 2023 bar exam under state authority, failing to address or prevent hostile conditions that directly impacted Plaintiff. Her authority derives from Article VI, Section 5(3) of the Colorado Constitution.

106.    Ms. Yates and OAA provided no mechanisms to report or remediate bar exam misconduct, breaching their duty to ensure a fair testing environment. It is res ipsa loquitor that there should remedial measures to ensure applicants a fair exam, and breaching this guarantee is a state breach under color of state law.

107.    The hostile exam conditions directly biased Plaintiff's character and fitness evaluation, a state-regulated process, thereby implicating state actors in procedural unfairness. The character and fitness panel and bar entrance process are explicitly regulated as an office of the Colorado Supreme Court.

108.    Ms. Yates' failure to manage the state-leased exam venue contributed to the unsafe and discriminatory environment under state authority, because the Colorado Supreme Court decided to consider whether to take the president-elect off of the Colorado ballot, causing fury in the legal world.  The Colorado Supreme Court should have implemented measures to prevent harm to applicants. Omitting efforts to address the national polarization nationwide caused by the Colorado Supreme Court operated under the color of state law to ignore offenses committed against the court's political opposition.

109.    Ms. Yates failed to safeguard against foreseeable risks arising from political tensions among applicants, despite her role as a state official responsible for ensuring neutrality. She did not warn of spitting behaviors by applicants.

110.    Ms. Yates, as a state actor, neglected her duty to provide a fair and impartial licensing process, operating under the color of state law to Plaintiff's detriment.

111.    The combined actions of Aurora and Jessica Yates, facilitated by their roles as state actors, demonstrate a clear pattern of abuse under color of state law that harmed Plaintiff's reputation, career, and constitutional rights. The use of state authority and resources to inflict harm demonstrate actions under color of state law.

Aurora and Ms. Yates' Actions Subjected Plaintiff to Tangible Retroactive Harm, Damaging His Career and Reputation and Compromising His Bar Admission Process

112.   Aurora officers created and maintained fake criminal records, damaging Plaintiff's reputation and professional standing by transferring the record to CBI 20 years after the alleged incident.

113.   The fabricated records conflicted with Plaintiff's documented employment history for the City of Denver, undermining his credibility.

114.   The false records were transferred to CBI in 2024 and used to prejudice Plaintiff's character and fitness evaluation, critical for bar admission.

115.   Plaintiff was forced to take the July 2023 bar exam under hostile conditions, including drinking from a contaminated beverage due to another applicant spitting in it.

116.   Ms. Yates and OAA failed to address the spitting incident and other disruptions during the bar exam, directly affecting Plaintiff's ability to perform when compared to Barbri exams he practiced with.

117.   The hostile conditions during the bar exam biased the character and fitness panel's view of Plaintiff, jeopardizing his professional licensure.

118.   Plaintiff's bar exam score was significantly lower than his practice exams, potentially due to the stress and distractions caused by the hostile environment.

119.   The fabricated criminal records presumptively disqualified Plaintiff from professional opportunities, including legal practice in Colorado.

120.   The false criminal record likely disqualified Plaintiff from the Daniels Fund scholarship in 2005, derailing his academic and professional trajectory. It also led to factual misprisons under U.S.C.A. §§ 1001-2 because Aurora created Plaintiff a history of false interactions with the police before he was actually incarcerated and engaged with the police department as a defendant in a case; and overlapping when he worked for the City and County of Denver. Creating a fake criminal record is a felony under U.S.C.A. § 1028, OAA and street officers had knowledge of the fake record because Plaintiff worked at the police station, Aurora and OAA failed to notify authorities of Plaintiff's complaint of overlapping crimes told to Safe City in Denver, Aurora Records, and OAA. And by reporting the incident 20 years later, Aurora and OAA are taking affirmative steps to conceal the identity of the unnamed and unmasked officers who entered Plaintiff's mugshot 2 years after the alleged incident occurred. OAA and Aurora used a fake criminal record to retroactively misprison the Plaintiff for the Panel hearing.

121.    The hostile conditions during the bar exam and the discovery of fabricated records caused Plaintiff significant stress and emotional distress.

122.    The compounded harm delayed Plaintiff's ability to practice law and advance in his chosen career.

123.    The ongoing effects of the fabricated records and hostile exam environment caused lasting psychological harm, impacting Plaintiff's well-being.

Bar Exam and Character and Fitness Panel Violations

124.    Plaintiff's right to a fair character and fitness panel hearing was violated by the actions of Ms. Yates and OAA and Regulation Counsel. Ms. Yates permitted another applicant to sit in Plaintiff's chair during the July 2023 bar exam, resulting in the spitting incident.

125.    OAA failed to take action or notify Plaintiff about the incident during or after the bar exam. OAA failed to communicate an administrative complaint process for the bar exam incident within a reasonable time.

126.    Ms. Yates knew or should have known that the incident would compromise Plaintiff's due process rights before the character and fitness panel because the offense naturally would result in Plaintiff not passing the bar exam. Although plaintiff passed the bar under these conditions, his score was significantly lower than Barbri practice exams he prepared with. She should have known that allowing spitting is allowing cheating, breaching her professional obligations regardless of reporting.

127.    Ms. Yates, in her role as head of OAA, had a constitutional duty to protect the fairness of the bar exam. Ms. Yates failed to protect Plaintiff from the hostile environment experienced during the July 2023 bar exam. The hostile conditions at the exam was exhibited by the spitting incident, which was not addressed by Ms. Yates or her office.

128.    Ms. Yates leased the Denver Western Complex for the bar exam and had a duty to warn and prevent harm to exam applicants. She did not.

129.    Aware of the politically charged atmosphere in Colorado's legal profession concerning the President-elect, Ms. Yates failed to implement measures to safeguard independent minorities from the passionate Colorado democrats. She knew that the Colorado Supreme Court was considering and ruled the President-elect off the Colorado presidential ballot, so she knew that there would be applicants from states that support the newly elected president. Ms. Yates knows that law school rankings

continuous changes fueling competition among attorneys. Given the circumstances, there was a strong likelihood that applicants would contaminate each other's drinks during the exam, but OAA did not take reasonable steps to safeguard applicants.

130.    Ms. Yates violated Plaintiff's professional due process rights to a fair examination by allowing another applicant to sit in Plaintiff's chair during the exam without intervening.

131.    The applicant who sat in Plaintiff's chair spit in Plaintiff's drink, causing further harm to Plaintiff. Plaintiff removed the applicant from his chair without assistance, despite the hostile nature of his action to invade Plaintiff's testing province. Plaintiff negligently drank some of his drink before continuing the exam.

132.    Ms. Yates had a duty to ensure seating assignments were adhered to during the exam. Ms. Yates had a duty to guard against or warn of potential spitting incidents or similar misconduct. Ms. Yates failed to fulfill her duty, resulting in a violation of Plaintiff's due process rights and rights protected under the Privileges and Immunities Clause. The hostile environment and failure to address the spitting incident further biased the character and fitness panel's hearing.

133.    Ms. Yates failed to ensure the integrity of the bar admission process.

Aurora's False Reporting an Equivocal Criminal Record From 20 Years Ago Violates Plaintiff's Well-Established Rights

134.    Simultaneously, Aurora knowingly and recklessly reported a false 20 year old criminal record to CBI after Aurora Records found that the officer did not report the 1999 incident to Aurora Records until 2 years after it is alleged to have happened. The offense allegedly occurred in 1999, but Aurora did not receive the record until 2001. Aurora reported the incident to CBI in 2024. Aurora played with this fake record for over 20 years. Playing with this sole felony accusation on Plaintiff's criminal record violates Plaintiff's rights, because it never actually happened.

135.    Plaintiff conducted a CBI fingerprint record search in 2019 for the incident, and CBI, after fingerprinting, found nothing. Plaintiff recently performed the same fingerprint procedure and background search in 2024 and found that Aurora reported the 1999 incident that was created 18 years ago, in 2001, and allegedly happened in 1999.

136.    Plaintiff has no personal knowledge of the alleged incident from 1999. Colorado did not jail Plaintiff as a minor. Alleging that Colorado had jailed the Plaintiff caused harm to Plaintiff's career and standing since the officer entered it. For example, in

2005, Plaintiff was an interview finalist for the Daniels Fund full-ride scholarship program. Because, Denver officials from the Denver Department of Public Safety recommended him for the scholarship, Aurora's criminal records likely disqualified his application. Because Plaintiff lacked personal knowledge of the initial incident (or when officers reported it), Plaintiff did not realize the shamming effects of having a criminal record would kick in and disqualify his scholarship application.

137.  Plaintiff informed Aurora City Records after finding no record of the 1999 incident in CBI database after he discovered CBI's record was unfounded in 2019.

138.  Further, Aurora possesses criminal records from 1999, 2002, and 2003 that Plaintiff has no personal knowledge of, and overlap full-time (summers) and part-time (fall-spring) work for the City and County of Denver. W2s were submitted to ex-attorney but he failed to communicate them to OAA.

139.  These records can presumptively disqualify plaintiff from the legal profession just like it likely disqualified his Daniel's Fund application in 2005.

140.  Plaintiff has no personal knowledge of the juvenile criminal record allegations made by Aurora.

141.  Aurora's reporting of the old criminal allegations and the creation of a conflicting criminal record negatively impacts Plaintiff's standing and career.

False Identification Documents Created by Aurora Officers Were Used to Misrepresent Plaintiff's Criminal History

142.  Aurora officers created and maintained false criminal records for Plaintiff, fitting the definition of "false identification documents" under 42 U.S.C. § 1028(a)(1).

143.  The state records fabricated by Aurora are "identification documents" under federal law, as they contain mugshots, fingerprints, and personal information used to identify Plaintiff in official state systems. And the deliberate creation of false records with knowledge of their inaccuracy satisfies the requirement of "knowing" action under 42 U.S.C. § 1028(a)(1).

144.  The false records misrepresented Plaintiff's criminal history, which constitutes a form of misidentification, as Plaintiff's true criminality was distorted by these records. This being the first crime on Plaintiff record puts all his records at issue because Plaintiff's first fingerprinting would have been at 12 years old. Aurora alleged it booked and fingerprinted Plaintiff at a tender age when it re-reported the incident 20 years later.

145.    The use of fabricated criminal records in the bar admission process demonstrates a violation of federal law as they were used as "false identification documents" to implicate Plaintiff in crimes in an official capacity.

146.    The transfer of these fabricated records 20 years later to CBI resulted in Plaintiff being subjected to federal databases based on false documents, which constitutes illegal identification fraud.

147.    The use of false criminal records for bar admission proceedings constitutes a deceptive practice, aimed at misidentifying Plaintiff's character and fitness to be an attorney and preventing him from practicing law.

148.    Aurora and Ms. Yates transferred fabricated criminal records to CBI, which falls under the "transfer" provision of 42 U.S.C. § 1028(a)(2) since the false documents were moved to another agency. And Plaintiff supplied knowledge that their creation was without legal authorization which empowered them to report it.

149.    By sending fabricated criminal records to CBI in 2024, Aurora and Ms. Yates unlawfully disseminated false identification documents, which is prohibited under 42 U.S.C. § 1028(a)(2), because Plaintiff told them that it was made without legal authorization.

150.    The false records placed in CBI's database 20 years after the alleged incident will lead to future misleading federal and state background checks, which violates the legal process of maintaining accurate identification records under 42 U.S.C. § 1028(a)(2).

151.    The transfer of false documents to CBI for use in official legal and regulatory processes (such as bar admissions) and creation of the second deficiency report resulted in Plaintiff being misidentified, which constitutes a violation of 42 U.S.C. § 1028(a)(2). The second deficiency report by OAA contained misidentified crimes from 1999-2012, some of which the crimes belonged to Plaintiff's brother.

152.    Aurora and Ms. Yates knew the criminal records were false when they transferred them, which meets the intent requirement for violations under 42 U.S.C. § 1028(a)(2). And OAA knew that Plaintiff's brother's crimes were not his.

153.    Despite Plaintiff's attempts to address the false records, Aurora and Ms. Yates continued to transfer them, compounding the violation of 42 U.S.C. § 1028(a)(2) by failing to correct and remove the fake documents.

Employment Timeline and Conflict with Denver Employment

154. From about 2001 to 2005, Plaintiff worked for the City and County of Denver.

155. The existence of Aurora's criminal records creates a conflict with Plaintiff's employment history in Denver. If the criminal records were true, Plaintiff would have been dishonest in court and during employment with the City and County of Denver.

156. Plaintiff's employment with Denver Safe City (part-time), the Denver Museum of Nature and Science (full-time), Denver Environmental Health (full-time), and Denver Clerk and Recorder (full-time) is impacted by the criminal record conflict Aurora created. Aurora alleges tickets and jail immediately before and while Plaintiff worked for Denver. Aurora alleges 1 year of probation, teen court, and fines while Plaintiff worked for Denver Safe City and the Denver Museum of Nature and Science. Aurora alleges tickets while Plaintiff was working full time for the Denver Department of Environmental Health. Therefore, Plaintiff has lost the ability to leverage his past work experience in future settings because of the fake records.

Conflict of Interest & Public Defender Office Closure

157. In September 2023 Plaintiff retained a character and fitness attorney ("ex-attorney") who was privy to the second deficiency report. Plaintiff's ex-attorney is a commissioner of the Aurora municipal public defender's office. The attempted closure of the Aurora municipal public defender's office created a conflict of interest due to his position, because Aurora could be held personally liable if Plaintiff's claims are true. Reporting the contested records to a commissioner attorney, not the applicant, shows OAA and Aurora attempted to isolate the allegations Plaintiff made.

158. Aurora knew Plaintiff was working at the Office of the State Public Defender's (and it's publicly available on LinkedIn), and the Office of Attorney Regulation knew ex-attorney represented Plaintiff. The attempted closure of the Aurora public defender office was broadcast nationwide. The Office of Attorney Regulation is responsible for, primarily, identifying conflicts upon closure of a law firm. Ex-attorney guarded the interests of Aurora to the detriment of the Plaintiff. Therefore, the closure of the Aurora public defender's office created a present conflict with ex-attorney and lacked any rational basis.

159. The closure of the Aurora municipal public defender's office was part of a budgetary decision made in October 2023. In 2024, Aurora opened bids for private attorneys to take over public defense cases, but no bids were received.

160.    The closure of the Aurora public defender's office directly impacted Plaintiff's case. Ex-attorney did not submit the second deficiency report requirements during 1 year of representation. He withdrew representation on September 30, 2024, and did not attend the panel hearing on October 15, 2024. The determination against Plaintiff's license to practice law directly resulted from the irrational conflict.

161.    Plaintiff's ex-attorney was a commissioner of the Aurora public defender's office. The closure of the public defender's office created a present conflict of interest for ex-attorney, who was representing Plaintiff, because Plaintiff alleged Aurora created a fake criminal record while he was working for the City and County of Denver. As proof, Plaintiff submitted W2's from when he worked for Denver that the panel never received.

162.    The closure of the Aurora public defender's office influenced the panel's perception of Plaintiff's case inevitably, because the closure of the public defender's office was broadcast nationwide, and the panel knows that Plaintiff alleges the fake criminal record created by Aurora in his bar application. If ex-attorney took up Plaintiff's case and submitted documents to OAA that are contrary to Aurora's Records, Aurora City Council could respond. And they did when in October 2023 they chose to close the doors of their criminal indigent defense program which mostly served African Americans. Ex-attorney submitted no documents to OAA to the surprise of the Plaintiff. Therefore, the entire attorney admissions process was discriminatory and unfair by the threated closure of the public defender's office that represents low-income indigent clients many of which are African American like the Plaintiff.

163.    Additionally, Plaintiff began working for the Office of the State Public Defender in August 2023. The closure of the Aurora public defender's office was contrary to the values of the Office of the State Public Defender.

Bias in Due Process Hearing

164.    Biased circumstances surrounded Plaintiff's character and fitness hearing in control of OAA and Aurora. The hearing panel's ability to impartially assess Plaintiff's case was inherently compromised by the criminal records conflict, spit during the bar exam, and the closure of the Aurora public defender's office.

RELIEF

Injunctive Relief Against OAA

22

165.   Plaintiff seeks an injunction mandating OAA to report all misconduct occurring during bar examinations.

166.   The reporting system should be compulsory, with no exceptions, covering all forms of misconduct, harassment, and hostile behavior.

167.   A strict liability standard must apply to OAA for any failure to report misconduct during the bar exam.

168.   Any unreported misconduct should automatically result in penalties or corrective measures imposed on OAA.

169.   Plaintiff requests an independent committee to oversee the implementation of the mandatory reporting system. OAA must investigate all reported incidents promptly and fairly.

170.   Plaintiff seeks an order requiring OAA to take immediate action when misconduct is reported during a bar exam.

171.   The OAA should provide a detailed report of any misconduct to the affected test-taker.

172.   Plaintiff requests that OAA ensure protection for out-of-state test-takers, guarding them from discrimination.

173.   This mandatory reporting requirement should apply to all future bar examinations in Colorado.

174.   Plaintiff requests that OAA be ordered to issue his Colorado bar license as a result of the violation of his due process rights.

175.   OAA should be compelled to address any past misconduct that was improperly handled.

176.   Plaintiff seeks an order requiring OAA to revise its examination procedures to ensure fair treatment of all test-takers regardless of the condition of the bar application or political affiliation.

177.   OAA must implement safeguards to prevent hostile and discriminatory environments during future bar exams.

Injunctive Relief Against the City of Aurora

178.   Plaintiff seeks an injunction requiring Aurora to expunge the criminal records at issue in this case.

179.   The criminal record, which Plaintiff has no personal knowledge of, should be expunged from all databases maintained by Aurora.

180. Plaintiff alleges that the criminal record was used unfairly to prevent his entry into the legal profession.

181. The expungement is necessary because the record has no basis in Plaintiff's knowledge or experience.

182. Plaintiff requests an order compelling Aurora to notify all relevant agencies, including the CBI, that the record has been expunged.

183. Aurora must ensure that no further reports of this criminal record are made to state or federal authorities.

184. Expunging the record is necessary to protect Plaintiff's rights under the Privileges and Immunities Clause of the U.S. Constitution.

185. The criminal record has caused significant harm to Plaintiff's reputation and professional opportunities, necessitating expungement.

186. Plaintiff seeks an injunction to prevent Aurora from using this record against him in any future proceedings.

187. Aurora must issue a formal acknowledgment that the criminal record has been expunged and no longer has any legal effect.

188. Plaintiff seeks an order compelling Aurora to review its practices for reporting criminal records to ensure accuracy and fairness. The expungement of the record is crucial to Plaintiff's ability to proceed with his legal career.

189. Plaintiff requests that Aurora be required to provide confirmation to Plaintiff and the court that the expungement has been completed.

190. The expungement process must be carried out within a specified timeframe to ensure timely resolution.

191. Aurora should be prohibited from further dissemination or reference to the expunged record in any legal or administrative matters.

192. Plaintiff seeks an order requiring Aurora to revise its reporting policies to prevent similar harm to other individuals in the future.

Loss of Earning Power

193. Plaintiff seeks compensatory damages from John Doe and Aurora for loss of earning power.

194. The delay in Plaintiff's bar admission has caused him to miss out on numerous career opportunities.

195.    Plaintiff alleges that John Doe's and Aurora's actions have significantly impacted his ability to earn a living.

196.    Plaintiff's potential earning power as a licensed attorney has been diminished by their interference. The inability to practice law in Colorado has directly affected Plaintiff's career trajectory.

197.    Plaintiff seeks damages for the financial losses caused by the actions of John Doe and Aurora.

198.    Plaintiff has lost the opportunity to earn income in the legal profession due to the misconduct of John Doe and Aurora.

199.    Plaintiff's professional development and earning capacity have been severely hindered by the actions of John Doe and Aurora.

200.    The compensatory damages sought should reflect the income Plaintiff would have earned as a licensed attorney in Colorado.

201.    Plaintiff's lost earning power includes both immediate income and long-term career opportunities.

202.    The misconduct of John Doe and Aurora has irreparably harmed Plaintiff's financial standing and career prospects.

203.    Plaintiff requests monetary relief for the damages caused by the delay in his bar admission and lost income.

204.    The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Lost Wages- Back-Pay

205.    Plaintiff seeks damages for lost wages from John Doe and Aurora.

206.    Plaintiff alleges that he would have been employed as an attorney had it not been for the interference by John Doe and Aurora.

207.    Plaintiff's lost wages include the income he would have earned from the date of his anticipated bar admission to the present.

208.    The lost wages calculation includes missed opportunities for employment and professional advancement.

209.    Plaintiff's inability to secure legal employment is a direct result of the actions of John Doe and Aurora.

210.    Plaintiff seeks compensation for the actual income he would have earned during this period.

211. The delay caused by John Doe and Aurora has prevented Plaintiff from achieving financial stability.

212. Plaintiff's lost wages should reflect the benefits, bonuses, and promotions he would have received as a practicing attorney.

213. Plaintiff requests that John Doe and Aurora be held financially liable for the lost wages caused by their misconduct.

214. The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Loss Wages- Compensatory Damages

215. Plaintiff seeks damages for lost wages from Aurora, including the five years of homelessness from 2006 to 2012 due to the fake criminal record.

216. Plaintiff alleges that the fraudulent use of a fake criminal record, which he had no personal knowledge of, caused him to experience homelessness for five years.

217. During the period from 2006 to 2012, Plaintiff was unable to secure stable employment due to the unknown criminal record.

218. Plaintiff was deprived of the opportunity to earn a livelihood during this period, resulting in significant financial losses. The fraudulently reported criminal record prevented Plaintiff from obtaining employment in both legal and non-legal professions, exacerbating his financial hardship.

219. Plaintiff's lost wages calculation includes the income he would have earned from 2006 to 2012 if the fake criminal record had not been used against him.

220. The five years of homelessness resulted in not only financial loss but also the loss of career opportunities and personal advancement.

221. Aurora's failure to address the fraudulent criminal record caused this extended period of homelessness and financial deprivation.

222. Plaintiff seeks compensation for the income he would have earned during those five years, as well as the wages lost due to the delay in obtaining his bar admission.

223. The lost wages calculation further includes missed opportunities for career advancement and benefits that Plaintiff would have obtained as a licensed attorney.

224. Plaintiff's ability to achieve financial stability has been severely hindered by both the fake criminal record and the subsequent interference in his bar admission process.

225.   The damages sought reflect not only immediate lost income but also the long-term effects of financial instability caused by the five years of homelessness and the subsequent delay in bar admission.

226.   Plaintiff requests that Aurora be held financially liable for the lost wages resulting from the fake criminal record and their ongoing misconduct, which have negatively impacted his professional and personal life.

227.   The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Pain and Suffering

228.   Plaintiff seeks damages for pain and suffering caused by the actions of Aurora.

229.   Plaintiff has endured homelessness for five years as a direct result of Aurora's record that he has no personal knowledge of.

230.   The financial and emotional strain of homelessness has caused Plaintiff significant suffering.

231.   Plaintiff requests damages for the physical and emotional hardship he experienced during his period of homelessness.

232.   The interference by John Doe and Aurora in Plaintiff's bar admission process contributed to his prolonged homelessness.

233.   Plaintiff seeks compensation for the mental suffering caused by his inability to secure stable housing for the period of 2006-2012.

234.   The five years of homelessness have caused Plaintiff lasting emotional trauma, including depression and anxiety.

235.   Plaintiff's pain and suffering include the financial insecurity and lack of basic living necessities during his homelessness.

236.   Plaintiff alleges Aurora's actions directly caused his homelessness and the resulting emotional harm.

237.   Plaintiff requests damages for the emotional distress caused by being deprived of his right to pursue a legal career.

238.   Plaintiff seeks compensation for the suffering caused by the loss of personal dignity and self-worth during his homelessness.

239.   The ongoing uncertainty regarding his professional future has compounded Plaintiff's emotional suffering.

240.    Plaintiff requests that Aurora be held responsible for the emotional and psychological damages caused.

241.    The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Mental Suffering

242.    Plaintiff seeks damages from John Doe for mental suffering caused by the hostile conditions during the July 2023 bar exam.

243.    The actions of John Doe during the bar exam caused Plaintiff significant emotional distress.

244.    The hostile environment and misconduct, including the spit incident, created unbearable levels of stress for Plaintiff.

245.    Plaintiff seeks compensation for the anxiety and mental suffering he endured as a result of John Doe's behavior during the exam.

246.    The mental anguish caused by John Doe's actions during the exam will have a lasting impact on Plaintiff's well-being.

247.    Plaintiff alleges that the failure to address the misconduct at the bar exam caused further emotional harm.

248.    Plaintiff requests damages for the ongoing mental suffering caused by John Doe's actions and the hostile exam environment.

249.    Plaintiff's mental health has deteriorated as a result of the stress and uncertainty caused by the bar admission process and he currently works with a psychologist to cure the harms.

250.    Plaintiff seeks damages for the long-term psychological harm caused by John Doe's interference and misconduct.

251.    The emotional toll of the exam incident, combined with the delay in bar admission, has caused Plaintiff significant suffering.

252.    Plaintiff seeks compensation for the emotional distress he experienced as a result of John Doe's actions and the hostile conditions at the bar exam.

Loss of Future Opportunities

253.    Plaintiff seeks damages for the loss of future career opportunities caused by John Doe and Aurora.

254.    The inability to practice law has prevented Plaintiff from establishing himself in the legal profession.

255.      Plaintiff alleges that the actions of John Doe and Aurora have caused lasting harm to his professional prospects.

256.      The actions of John Doe and Aurora have caused Plaintiff to miss out on critical career-building experiences.

257.      Plaintiff's future earning potential has been severely impacted by the delay in his legal career caused by John Doe and Aurora.

258.      The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Loss of Professional and Personal Relationships

259.      Plaintiff seeks damages from Aurora for the personal and professional relationships that have been damaged.

260.      Homelessness and the delay in bar admission caused by Aurora has strained Plaintiff's personal and professional relationships.

261.      Plaintiff alleges that his inability to practice law has affected his standing within the legal community.

262.      Plaintiff's personal relationships have also been harmed by the financial instability and emotional distress caused by the defendants.

263.      The uncertainty of his professional future has caused tension in Plaintiff's personal life, warranting compensation.

264.      The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Legal Fees and Costs

265.      Plaintiff seeks damages to cover the legal fees and costs incurred as a result of John Doe and Aurora's actions.

266.      The interference by John Doe and Aurora has forced Plaintiff to pursue this complaint.

267.      Plaintiff seeks reimbursement for court fees, attorney's fees, and other costs associated with this case.

268.      The protracted delay in bar admission has significantly increased Plaintiff's legal expenses, which he seeks to recover.

269.      The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

Other Emotional and Psychological Damages

270.    Plaintiff seeks damages for the ongoing emotional and psychological toll caused by the discrimination and delay in the bar admission process.

271.    The uncertainty and stress caused by the actions of John Doe and Aurora have led to long-term emotional harm.

272.    Plaintiff requests compensation for the anxiety, depression, and other mental health issues caused by their interference in his legal career.

273.    The dollar amount of damages is not relevant to jurisdiction, so will be calculated at a later date.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief: injunctive relief against the OAA requiring mandatory reporting of all misconduct at the bar examination, expungement of the fake criminal records by the City of Aurora; compensatory damages from John Doe and Aurora for lost wages, loss of earning power, pain and suffering due to homelessness and mental distress, and loss of personal and professional relationships; and an award for legal fees and costs incurred as a result of the defendants' actions. Plaintiff further requests any additional relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable as of right to a jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.